IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NOVA FINANCIAL HOLDINGS INC., and NOVA BANK, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No. 11-07840 |
| BANCINSURE, INC., | : : : | |
| Defendant. | : : | |

MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                           **April 17, 2012**

Presently before this Court is a "Motion to Dismiss Plaintiffs' Complaint Pursuant to Rule 12(b)(6)" filed by Defendant, Bancinsure, Inc. ("Defendant"), Plaintiffs' Response and Defendant's Reply. For the reasons set forth below, we grant Defendant's Motion as to Counts III and IV, and deny Defendant's Motion on Counts V and VI.

**I.    BACKGROUND**

Plaintiffs, Nova Financial Holdings, Inc. and Nova Bank ("Plaintiffs"), are corporations organized under the laws of the Commonwealth of Pennsylvania, with their principal place of business located in Berwyn, Pennsylvania. (Compl. at p. 1.) Defendant is an Oklahoma corporation with its principal place of business located in Oklahoma City, Oklahoma. (Id.) Plaintiffs and Defendant entered into a one-year insurance agreement ("Insurance Agreement") starting on October 31, 2009. (Id. at p. 2.) Among other provisions, the Insurance Agreement states that Defendant will indemnify Plaintiffs for losses "resulting directly from dishonest or

1

fraudulent acts committed by the Employee acting alone or in collusion with others." (Compl. at Exhibit A.) These acts must be committed "with the manifest intent to (a) cause the (Plaintiffs) to sustain such loss, or (b) to obtain improper financial benefit for the Employee or another person or entity." (Id.)

In May 2010, Plaintiffs became aware that two of their employees, Thomas Patterson ("Patterson") and Beth Martin ("Martin"), misappropriated hundreds of thousands of dollars of customer funds. (Compl.at p. 3.) Patterson was the Chief Lending Officer at Nova Bank and Martin worked as Nova Bank's Berwyn Business Center Manager. (Id.) In meetings with the officers of Nova Bank, Martin and Patterson admitted to committing the criminal acts. (Id.)

An ensuing investigation by Nova Bank corroborated Martin and Patterson's admissions, and uncovered a scheme to illegally provide money to several of Patterson's clients. (Id. at p. 5.) Patterson and Martin attempted to conceal these illegal transactions through misappropriating other client's funds. (Id.) This deceptive and illegal behavior was aimed at circumventing the established rules, standards and procedures of Nova Bank. (Id.)

Specifically, Plaintiffs allege that the unauthorized and illegal actions of Patterson and Martin included:

- On November 24, 2009, Patterson issued and approved a cashier's check in the amount of $230,938 to a Federal Identification Card ("FIC") creditor from the Betti Family Control Partnership ("Betti Trust") line of credit. The check was signed by both Patterson and Martin. (Id.)

- On November 30, 2009, Patterson approved, and Martin processed, a $200,000 deposit into an FIC account from the Betti Trust credit line. (Id.)

- On March 10, 2010, Patterson deposited an unauthorized and illegal advance of $110,000 into two accounts held by Mario Dinardo Custom Cabinets ("Dinardo") from the Betti Trust line of credit. The deposit was approved by Patterson and

      processed by Martin.  (Id.)

- On April 2, 2010, Patterson made a $120,000 advance to an FIC account drawn from the Betti Trust credit line.  This advance was approved by Patterson and processed by Martin.  (Id. at p. 6.)

- On April 28, 2010, Patterson made an advance for $30,000 to Dinardo from a line of credit held by SVI Development.  This advance was approved by Patterson and processed by Martin.  (Id.)

      On June 26, 2010, the Tredyffrin Township Police Department and the Federal Bureau of Investigation formed a joint task force to investigate the criminal actions of Patterson and Martin. (Id. at pp. 4-5.)  Criminal charges were subsequently brought against Patterson.  (Id.)  On October 14, 2011, Patterson pled guilty to one count of misapplication of funds by a bank employee.  (Id. at p. 6.)  The guilty plea colloquy stated that Patterson "fraudulently and intentionally transferred funds from three existing bank customers to other bank customers." (Id.)  The colloquy asserted that such actions were done without creating any loan documents, without having any such documents signed, and without the knowledge or approval of Nova Bank.  (Id. at p. 7.)

      On November 19, 2010, pursuant to the Insurance Agreement, Plaintiffs provided Defendant with their insurance claims in relation to the actions of Patterson and Martin.  (Id.) Defendant notified Plaintiffs on two separate occasions in December 2010 that they required more time to investigate the claims.  (Id.)  Throughout this investigation, Plaintiffs bore all the costs of reimbursing their clients' stolen funds.  (Id.)  On May 19, 2011, Defendant denied coverage for all of Plaintiffs' theft related losses.  (Id.)  Subsequently, on June 30, 2011, Plaintiffs requested a reconsideration of this denial of coverage.  (Id.)  Defendant refused to

reconsider their coverage decision and reissued a denial of the claim on August 4, 2011. (Id.) Finally, Plaintiffs asked for reconsideration of the denial in light of Patterson's October 14, 2011 guilty plea for misapplication of funds by a bank employee. (Id. at p. 8.) Defendant again denied coverage. (Id.)

Plaintiffs filed suit on December 27, 2011. The Complaint alleges the following counts against Defendant: (I) Breach of Contract; (II) Bad Faith; (III) Breach of the Duty of Good Faith and Fair Dealing; (IV) Declaratory Relief of Indemnity; (V) Breach of the Implied Warranty of Fitness for the Intended Purpose; (VI) Breach of the Implied Warranty of Merchantability; and (VII) Breach of the Warranty of Suitability.

Defendant moves to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6). Specifically, Defendant argues for the dismissal of Counts III, IV, V and VI. For the following reasons, we grant Defendant's Motion as to Count III for breach of the duty of good faith and fair dealing, and Count IV for declaratory relief of indemnity. However, we deny Defendant's Motion as to Count V for the implied warranty of fitness for the intended purpose, and Count VI for the implied warranty of merchantability.

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

4

conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007).  Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (quoting Twombly, 550 U.S. at 563 n.8) (alteration in original).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

 Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed. The Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *6 (E.D. Pa. Apr. 8, 2009).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231.  Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

### A. Count III  Duty of Good Faith and Fair Dealing

In the Complaint, Plaintiffs assert that Defendant breached the duty of good faith and fair dealing by denying the claim for coverage. In response, Defendant finds refuge in a ruling of this Court. In Cummings v. Allstate Insurance Co., we held that a breach of contract action encompasses any claims asserting a breach of the implied duty of good faith and fair dealing. Cummings v. Allstate Insurance Co., No. 11-02691, 2011 WL 2681517, at *4 (E.D. Pa. July 11, 2011). Accordingly, a breach of contract claim precludes a separate and distinct claim emanating from the duty of good faith and fair dealing since the actions forming the basis of the claims are essentially the same. Id.; see also McHale v. NuEnergy Group, No. 01-4111, 2002 WL 321797, at *8 (E.D. Pa. Feb. 27, 2002). Our finding is amply supported by courts in this Circuit and Pennsylvania. See Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000) (no independent cause of action for breach of duty of good faith); Meyer v. Cuna Mut. Group, No. 03-602, 2007 WL 2907276 at *14 (W.D. Pa. Sept. 28, 2007) (parties are generally precluded from raising a breach of the duty of good faith and fair dealing claim separate and distinct from the underlying breach of contract claim); JHE, Inc. v. Southeastern Pa. Transit Auth., No. 1790, 2002 WL 1018941, at *7 (Pa. Com. Pl. May 17, 2002) ("a breach of the covenant of good faith is nothing more than a breach of contract claim and that separate causes of action cannot be maintained for each"); LSI Title Agency, Inc. v. Evaluation Servs., Inc., 951 A.2d 384, 391 (Pa. Super. 2008) (holding that a breach of good faith and fair dealing is a breach of contract action).

In the case *sub judice*, Plaintiffs assert separate claims for breaches of contract and the

duties of good faith and fair dealing.  Based upon our prior precedent and relevant judicial decisions, we reject Plaintiffs' contentions as duplicative of the breach of contract claim.

In the alternative, Plaintiffs ask this Court to find that the Pennsylvania bad faith statute, 42 Pa. C.S.A. § 8371, creates a statutory duty of good faith and fair dealing.  This creative interpretation essentially turns the statute on its head.  Plaintiffs ask this Court to reach this finding without citing to any supporting case law.  We fail to find any, and in its absence, we neglect to invert the bad faith statute from a proscription to an affirmative duty.  Finally, Plaintiffs will not suffer any prejudice because the bad faith claim (Count II) remains.  Accordingly, Count III is therefore dismissed.

      B.      **Count IV  Declaratory Judgment to Indemnify**

Declaratory judgments are binding adjudications that set forth the rights and other legal relations of the parties involved without regard for whether or not future relief is or could be claimed.  See Black's Law Dictionary 13c (9th ed. 2009).  These judgments are commonly sought by insurance companies to ascertain the coverage of a policy.  Id.  Here, Plaintiffs request a declaratory judgment as to the obligations rendered by the insurance agreement on Defendant.  Specifically, Plaintiffs seek a judicial determination that Defendant is required to pay for all of the legal liabilities "arising out of the employee dishonesty claims pending" within the Insurance Agreement.  (Compl. at pp. 13-14.)

A crucial element in every breach of contract action requires a showing of a breach of some duty owed.  See 23 Williston on Contracts § 63:1 (4th Edition).  In Smithkline Beecham, Corp. v. Continental Insurance, which mirrors our case, the court dismissed a request for a declaratory judgment as duplicative of a breach of contract claim.  Smithkline Beecham, Corp. V.

Cont'l Ins. Co., No. 04-2252, 2004 WL 1773713, at *2 (E.D. Pa. Aug. 4, 2004).  The court found that:

> to determine whether or not a breach occurred, it must first be determined whether or not (the defendant) owed a duty to insure (the plaintiff) for its defense costs and for damages in the underlying litigation.  This raises the exact same issue to be decided in a declaratory judgment action, the purpose of which is to determine the respective rights and duties of the parties involved.

Smithkline Beecham, Corp.,2004 WL 1773713, at *1.

In this case, we follow the ruling in Smithkline and grant Defendant's Motion to Dismiss Plaintiffs' request for declaratory judgment.  The ruling in Smithkline provides ample support for our holding.  Additionally, our decision to deny separate claims based on the same issues conforms to the concerns of judicial economy.  See Good Lad Co. v. B & W Associates, No. 98-6612, 1999 WL 79662, at *2 (E.D. Pa. Feb. 5, 1999) (denying declaratory judgment involving the same issues in two separate actions for reasons of judicial economy).  Finally, Plaintiffs will not suffer prejudice from this ruling since they can still attain full relief from their breach of contract claim.  In addition, Plaintiffs fail to set forth any relevant judicial precedent or policy considerations to refute this finding; rather, they cite to cases where declaratory judgment is a peripheral issue.  See SB1 Federal Credit Union v. Cuna Mutual Group, No. 10-5375, 2010 WL 5464884 (E.D. Pa. Dec. 29, 2010); MI Windows & Doors, Inc. v. Southeastern Freight Lines, Inc., No. 07-1233, 2009 WL 506858 (W.D. Pa. Feb. 27, 2009); Nelson v. Vigilant Insurance Co., No. 07-1406, 2007 WL 3334993 (W.D. Pa. Nov. 9, 2007).  We are not persuaded by Plaintiffs' analysis and deny their request for declaratory judgment.

### C. Counts V and VI Implied Warranties of Fitness for a Particular Purpose and Merchantability

Plaintiffs aver separate causes of action alleging that Defendant breached the implied warranty of fitness for a particular purpose, and the implied warranty of merchantability with regards to the Insurance Agreement. An implied warranty of fitness for a particular purpose is a warranty found within the law, though not explicitly stated, that the item is suitable for certain special purposes. See Black's Law Dictionary 14c (4th ed. 2009). It requires that the seller had reason to know of the buyer's particular purpose at the time of entering the contract and that the buyer was relying on the seller's expertise. Altrionics of Bethlehem, Inc. v. Repco, Inc., 957 F.2d 1102, 1105 (3d Cir. 1992). An implied warranty of merchantability guarantees that the item sold is fit for its ordinary purposes. See Black's Law Dictionary 14c (4th ed. 2009); Altrionics of Bethlehem, Inc., 957 F.2d at 1105. For reasons of clarity and concision, we will analyze both claims en masse.

Under Pennsylvania law, both the implied warranty of merchantability and the warranty of fitness for an intended purpose arise by operation of law and serve to protect buyers from loss where goods purchased are below commercial standards or are unfit for the buyers purpose. 957 F.2d at 1105. Where there is a transaction of goods, these implied warranties are codified by statute in the Uniform Commercial Code ("UCC"). See 13 Pa.C.S.A. § 2102; Pennsy Supply, Inc. v. American Ash Recycling Corp. of Pa., 895 A.2d 595, 603 (Pa. Super. 2006); Turney Media Fuel, Inc. v. Toll Bros., Inc., 725 A.2d 836, 840 (Pa. Super. 1999) (holding that in order for warranties to apply there must be a sale of goods). Defendant contends that the warranties at issue solely originate from the UCC. Since insurance contracts are not "goods," Defendant

9

argues that the Insurance Agreement is not covered under the UCC.  Though Pennsylvania courts have not decided whether insurance contracts are considered goods under the UCC, Defendant asks this Court to follow the decisions of numerous jurisdictions finding that the UCC does not apply to insurance agreements.  We need not decide this issue because we agree with Plaintiffs' more meritorious claim that these warranties arise from the common law.

Plaintiffs argue that the common law, as applied by Pennsylvania courts, allows actions for the breach of the implied warranties of fitness for an intended purpose and merchantability that apply to non-goods contracts and contracts that fall outside the UCC.  Judicial precedent supports this notion that Pennsylvania law has recognized implied warranties outside of the UCC.  See Lupinski v. Heritage Homes, Ltd., 535 A.2d 656, 657-58 (Pa. Super. 1988) (finding an implied warranty of reasonable workmanship and an implied warranty of habitability even though buildings are not goods and, therefore, not covered by the UCC); Stonhard v. Advanced Glassfiber Yarns, Inc., No. 100380, 2001 WL 1807359, at *3 (Pa. Com. Pl. Nov. 21, 2001) (implied warranty found in service contract outside the scope of the UCC); Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 453 F.Supp. 527, 538 (W.D.Pa. 1978), rev'd in part on other grounds, 626 F.2d 280 (3d Cir. 1980) (the implied warranty of fitness for purpose is not an invention of the UCC [but] is an outgrowth of the common sense and common law recognition that some warranties may be implied under certain circumstances).  The UCC explicitly acknowledges and supports these decisions, noting that the warranty provisions of the UCC, "are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract."  13 Pa. C.S. § 2313 cmt. 2.

However, the Supreme Court of Pennsylvania has not decided whether the implied warranties at issue in this case apply outside the UCC.  "In the absence of a controlling decision by the Pennsylvania Supreme Court, a federal court applying that state's substantive law must predict how that state's highest court would decide this case."  Covell v. Bell Sports, Inc., 651 F.3d 357, 362 (3d Cir. 2011).  The Supreme Court of Pennsylvania did provide some guidance as to their predilection.  See Hoffman v. Misericordia Hosp. of Philadelphia, 267 A.2d 867, 870 (Pa. 1970).  Hoffman involved a wrongful death action against a hospital based on a claim that the hospital breached its implied warranty of merchantability and implied warranty of fitness for a particular purpose by giving decedent a tainted blood transfusion.  Hoffman, 267 A.2d at 868.  The Court did not find that the decision hinged on whether the UCC applied (i.e. the existence of a sale); rather, the Court asserted that warranties were implied in many cases prior to the enactment of the UCC.  See Conn v. Hunsberger, 224 Pa. 154 (1909) (bailment for hire); Shannon v. Boggs & Ruhl, 124 Pa. Super. 1 (1936) (bailment lease); Hartford Battery Sales Corp. v. Price, 119 Pa. Super. 165 (1935) (lease of personal property); White Co. v. Francis, 95 Pa. Super. 315 (1929) (bailment lease).  Further, Hoffman noted that the UCC "did not intend to impede the parallel development of warranties implied in law in non-sales situations." 267 A.2d at 870.

Following the path hewn in Hoffman and the recognition by Pennsylvania case law, we believe that the Supreme Court of Pennsylvania would find that the implied warranties of fitness for an intended purpose and merchantability are within the common law.  Thus, the Defendant's Motion to Dismiss as to Count V and Count VI is denied.

## IV. CONCLUSION

For the aforementioned reasons, we grant Defendant's Motion to Dismiss as to Count III for breach of the duty of good faith and fair dealing, and Count IV requesting a declaratory judgment. We deny Defendant's Motion to Dismiss as to Count V for the implied warranty of fitness for a particular purpose, and Count VI for the implied warranty of merchantability.

An appropriate Order follows.